PEOPLE v PADUCHOSKI

1. Criminal Law—Instructions to Jury—Preserving Questions—
   Court Rules.

   Objections to jury instructions in a criminal case cannot be raised
   for the first time on appeal, absent a showing of manifest
   injustice (GCR 1963, 516.2).

2. Criminal Law—Constitutional Law—Right of Confrontation
   —Cross-Examination.

   Refusal to permit a defendant's attorney to cross-examine the
   government's key witness concerning his place of employment
   is reversible error because it violated the defendant's constitu-
   tional right to confront the witnesses against him (US Const,
   Ams VI, XIV).

Appeal from Recorder's Court of Detroit, George T. Ryan, J. Submitted Division 1 October 5, 1973, at Detroit. (Docket No. 14577.) Decided November 2, 1973.

Patrick W. Paduchoski was convicted of attempted larceny in a building. Defendant appeals. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Gerard A. Poehlman,* Assistant Prosecuting Attorney, for the people.

*Carl Ziemba,* for defendant on appeal.

REFERENCES FOR POINTS IN HEADNOTES
[1] 53 Am Jur, Trial § 824.
[2] 21 Am Jur 2d, Criminal Law §§ 333, 334, 336, 337.

Before: DANHOF, P. J., and FITZGERALD and
WALSH,* JJ.

WALSH, J. Defendant, Patrick W. Paduchoski,
and one William Hawthorne were convicted by a
jury of attempted larceny in a building. MCLA
750.360; MSA 28.592. Each was sentenced to one
year probation. Defendant Paduchoski only ap-
peals his conviction.

Defendant first argues that the trial judge erred
in defining the element of intent in his instruc-
tions to the jury. While this instruction was some-
what ambiguous, no objection was made to it at
trial. Absent a showing of manifest injustice, objec-
tions to instructions cannot be raised for the first
time on appeal. GCR 1963, 516.2; *People v Flow-
ers,* 30 Mich App 579; 186 NW2d 777 (1971);
*People v Miron,* 31 Mich App 142; 187 NW2d 497
(1971); *People v Larry Smith,* 31 Mich App 191;
187 NW2d 490 (1971). No manifest injustice re-
sulted from the instruction on intent. We hold,
therefore, no reversible error arose from this in-
struction.

Next, did the trial court commit reversible error
when it ruled during cross-examination of the key
prosecution witness that the witness's place of
employment was immaterial?

Defendant and Hawthorne, employees of the
Acme Quality Paint Company, were charged with
larceny in the company's warehouse on the night
of September 14, 1971. An eyewitness, Joseph
Bryant, who was standing across the street from
the warehouse, testified that he saw defendant
Paduchoski jump from a car and run into the
building through a side door. He further testified
that a few seconds later both defendants ran from

* Circuit judge, sitting on the Court of Appeals by assignment.

the warehouse to the street and began walking down the sidewalk. An arresting police officer testified that defendants, who were apprehended as they walked down the sidewalk, were the same two men he momentarily viewed in the warehouse. However, the officer admitted that he lost sight of the two men after they fled through the side door. Thus, only witness Bryant's testimony unequivocally identifies the two men in the warehouse as the defendants.

On cross-examination, counsel for appellant's codefendant asked Mr. Bryant where he worked. The court sustained the prosecutor's objection, ruling that where the witness works is immaterial. During cross-examination by appellant's counsel an objection was made to a question concerning the witness's residence. During the colloquy between counsel and trial judge the question of place of employment again arose:

*"Mr. Young:* Well I take the position, your Honor, and I have to take it because having tried cases for 44 years and in cross-examination, the only way that I can properly represent a defendant in a criminal case is to cross-examine the witness on the stand at least enough to satisfy myself and to also give the jury the benefit of passing upon credibility and then I want to get to the point of where he's working. This becomes material too, and other questions that I'm going to ask. There's a lot of things that come in. There is no showing here, your Honor, to restrict this witness in reference to keeping anything secret. He's not an informer.

*"The Court:* It's not a matter of secrecy. It's a matter of materiality.

*"Mr. Young:* Well materiality I can only develop when I cross-examine the witness to establish his credibility.

*"The Court:* We're interested in what this witness saw that night, where he lives, what he does for a living

is completely immaterial and if the courts have ruled for 44 years otherwise, then I disagree with them."

In *Alford v United States,* 282 US 687; 51 S Ct 218; 75 L Ed 624 (1931), the Court held that it was an abuse of discretion and prejudicial error for the trial court to prohibit cross-examination of a government witness respecting his place of residence. The Court reasoned:

"Counsel often cannot know in advance what pertinent facts may be elicited on cross-examination. * * * It is the essence of a fair trial that reasonable latitude be given the cross-examiner, even though he is unable to state to the court what facts a reasonable cross-examination might develop. Prejudice ensues from a denial of the opportunity to place the witness in his proper setting and to put the weight of his testimony and his credibility to a test, without which the jury cannot fairly appraise them. * * * To say that prejudice can be established only by showing that the cross-examination, if pursued, would necessarily have brought out facts tending to descredit the testimony in chief, is to deny a substantial right and withdraw one of the safeguards essential to a fair trial. * * * In this respect a summary denial of the right of cross-examination is distinguishable from the erroneous admission of harmless testimony. * * * The question, 'Where do you live?' was not only an appropriate preliminary to the cross-examination of the witness, but * * * was an essential step in identifying the witness with his environment, to which cross-examination may always be directed." *Alford, supra,* at 693; 51 S Ct at 219–220; 75 L Ed at 628.

In *Smith v Illinois,* 390 US 129; 88 S Ct 748; 19 L Ed 2d 956 (1968), the Court reaffirmed *Alford.* In that case a witness who identified himself on direct examination as "James Jordan" admitted on cross-examination that "James Jordan" was not his real name. The trial judge, however, sustained objections to questions by the defense attorney

concerning the witness' correct name and residence. Holding this to be a denial of defendant's right to confront witnesses against him, US Const Ams VI, XIV, the Court stated:

"[W]hen the credibility of a witness is in issue, the very starting point in exposing falsehood and bringing out the truth through cross-examination must necessarily be to ask the witness who he is and where he lives. The witness' name and address open countless avenues of in-court examination and out-of-court investigation. To forbid this most rudimentary inquiry at the threshold is effectively to emasculate the right of cross-examination itself." *Smith, supra,* at 131; 88 S Ct at 750; 19 L Ed 2d at 959.

*Smith* and *Alford* held it improper to forbid cross-examination of a key witness concerning his place of residence. In the case at bar, the trial court forbade questions about the key witness' place of employment. We see no viable distinction between these. In fact, occupation may be more indicative of character, reputation, and credibility than residence. Therefore, we think *Smith* and *Alford* are controlling.

The Supreme Court has recognized two exceptions to the *Smith-Alford* standard. The trial court may limit cross-examination as to address where (1) the questions tend merely to harass, annoy, or humiliate the witness, *Alford, supra,* at 694; 51 S Ct at 220; 75 L Ed at 629; or (2) the inquiries would tend to endanger the personal safety of the witness, *Smith, supra,* at 134–135; 88 S Ct at 751; 19 L Ed 2d at 960 (White, J., concurring); *United States v Saletko,* 452 F2d 193 (CA 7, 1971), *cert den* 405 US 1040; 92 S Ct 1311; 31 L Ed 2d 581 (1972); *United States v LaBarbera,* 463 F2d 988 (CA 7, 1972). The record reveals neither exception applies.

The trial court erred in refusing to permit defendant's attorney to cross-examine the government's key witness concerning his place of employment. This error compels us to reverse defendant's conviction.

Reversed and remanded.

All concurred.