PEOPLE v BREAKFIELD

1. Criminal Law—Jury—Voir Dire—Absence of Complaining Witnesses—Speculation—Record Support—Appeal and Error.

A claim by a defendant that he was prejudiced by the absence of the complaining witness at the voir dire examination in a criminal trial because of the possibility that prospective jurors knew the witness by sight but not by name and thus could have been familiar with the complainant and unable to give defendant a fair trial is too speculative where it lacks record support; the Court of Appeals will not predicate reversal on bare speculation, especially where the defendant failed to request that the jurors be asked if they knew the complainant when she appeared.

2. Criminal Law—Evidence—Assault—Weapons—Suppression—Search and Seizure—Preserving Question.

A defendant charged with assault with intent to murder, who did not seek at trial to suppress the weapon allegedly used in the attack on search and seizure grounds, will not be heard to make this objection for the first time on appeal.

3. Appeal and Error—Criminal Law—Courts—Assault—Murder—Intent—Wording of Statute—Instructions to Jury—Elements.

Reference by a trial court to the crime of assault with intent to commit the crime of murder as "assault with intent to kill and murder" is archaic and should be discontinued, but, where the record reveals that the court correctly instructed the jury on the elements of the crime, reversal is not required (MCLA 750.83).

---

References for Points in Headnotes
[1] 21 Am Jur 2d, Criminal Law § 292.
[2, 3] 40 Am Jur 2d, Homicide §§ 568–582.
[4] 58 Am Jur, Witnesses § 574 et seq.
[5, 6] 21 Am Jur 2d, Criminal Law § 309 et seq.
Right of defendant in criminal case to conduct defense in person, or to participate with counsel. 77 ALR2d 1233.

4. W<small>ITNESSES</small>—C<small>RIMINAL</small> L<small>AW</small>—D<small>EFENDANT AS</small> W<small>ITNESS</small>—I<small>NSTRUC-</small>
   <small>TIONS TO</small> D<small>EFENDANT</small>—M<small>ANIFEST</small> I<small>NJUSTICE</small>—P<small>RESERVING</small> Q<small>UES-</small>
   <small>TION</small>.

   An instruction by a trial court to a testifying defendant to
   "answer the question as best you can, as truthfully as you can",
   not objected to at trial and which is now alleged to have
   conveyed to the jury the court's belief that defendant's testi-
   mony up to that point had been untruthful does not show a
   manifest injustice, and in the absence of objection at trial is not
   properly preserved for appellate review; the test is whether the
   remarks prevented the defendant from having a fair and
   impartial trial.

5. C<small>RIMINAL</small> L<small>AW</small>—R<small>IGHT TO</small> C<small>OUNSEL</small>—M<small>ISTAKE OF</small> C<small>OUNSEL</small>—S<small>ERI-</small>
   <small>OUSNESS</small>—D<small>ECISIVENESS</small>—B<small>UT-FOR</small> T<small>EST</small>—T<small>RIAL</small> T<small>ACTICS</small>—C<small>ON-</small>
   <small>STITUTIONAL</small> L<small>AW</small>—A<small>PPEAL AND</small> E<small>RROR</small>.

   A defendant may be granted appellate relief from a serious
   mistake of trial counsel where the lawyer's mistake is of such
   serious proportions that it may have been decisive and where
   but for the lawyer's mistake the defendant may not have been
   convicted, but behavior of counsel which can be fairly ascribed
   to reasonable trial tactics does not constitute a serious mistake
   of counsel.

6. C<small>RIMINAL</small> L<small>AW</small>—R<small>IGHT TO</small> C<small>OUNSEL</small>—A<small>DEQUACY OF</small> C<small>OUNSEL</small>—B<small>UR-</small>
   <small>DEN OF</small> P<small>ROOF</small>—T<small>RIAL</small> C<small>OURT</small>—M<small>OTIONS</small>—E<small>VIDENCE</small>—C<small>ONSTITU-</small>
   <small>TIONAL</small> L<small>AW</small>.

   A convicted person who attacks the adequacy of the representa-
   tion he received at his trial must prove his claim, and to the
   extent that his claim depends on facts not of record it is
   incumbent on him to make a testimonial record at the trial
   court level in connection with a motion for a new trial which
   evidentially supports his claim and which excludes reasonable
   hypotheses consistent with the view that his trial lawyer
   represented him adequately.

Appeal from Recorder's Court of Detroit, James
A. Hathaway, J. Submitted June 16, 1975, at
Detroit. (Docket No. 20706.) Decided August 27,
1975.

James L. Breakfield was convicted of assault
with intent to commit murder. Defendant appeals.
Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Patricia J. Boyle,* Principal Attorney, Research, Training & Appeals, and *Larry L. Roberts,* Assistant Prosecuting Attorney, for the people.

*Mayer & Mayer,* for defendant on appeal.

Before: T. M. BURNS, P. J., and QUINN and M. J. KELLY, JJ.

M. J. KELLY, J. Defendant was charged with the crime of assault with intent to commit murder. MCLA 750.83; MSA 28.278. He was convicted of that offense by a jury and was sentenced to a prison term of 5 to 15 years. He appeals of right. We affirm.

The prosecution's proofs showed that defendant gained access to the apartment of Dorothy Wilson who lived with her 16-year-old son Anthony Erby and Ms. Lois Smith. Defendant entered the apartment during the evening of May 4, 1973, by forcing Erby to admit him at gunpoint. As the women lay in bed sleeping, defendant opened fire, striking Ms. Smith. He then went to the apartment of Thomas Rutledge where he was arrested and a handgun was found under a pile of clothes.

The victim testified that she had been shot but that she had no first-hand knowledge of the identity of her assailant. She had been asleep. Erby testified that he saw defendant fire and identified the gun. Two neighbors heard gunfire and, five minutes later, saw defendant on the street nearby. Defendant was arrested in a bedroom of the nearby Rutledge apartment. The gun seen by Erby was found under a pile of clothes in the room. The tenant, Mr. Rutledge, said he hadn't seen the gun

before that date. Defendant testified on his own behalf and denied committing the crime. Ms. Wilson died before trial. Her testimony had not been preserved.

One allegation of error is that the *voir dire* examination of prospective jurors began in the absence of the complaining witness, Ms. Smith. Prejudice is said to flow from the possibility that prospective jurors knew the witness by sight but not by name. It is possible, the argument continues, that jurors who sat in judgment of defendant were familiar with the complainant and could not give defendant a fair trial.

We are unable to postulate either prejudice or irregularity. The claim of defendant is entirely speculative and entirely lacking record support. If defendant, after the arrival of Ms. Smith, had requested that the jurors be asked if they knew the complainant, a definitive answer would be in the record. It would have been a simple matter for defendant to request an instruction to the jurors to report to the trial judge if he or she was acquainted with a participant in the trial. This Court will not predicate reversal on bare allegations.

Defendant next argues that the court erroneously permitted the introduction into evidence of the gun found at the Rutledge apartment. Defendant's claim is that there is an inadequate "foundation", although defendant does not direct our attention to any particular deficiency. As noted, the gun was found in the Rutledge apartment soon after defendant's arrest there. According to one police officer, Rutledge gave the police permission to search. Mr. Erby unequivocally identified the gun as the one he had seen defendant use on the evening in question. At no time during

the trial did defendant seek to suppress the weapon on search and seizure grounds. He may not be heard to make this objection for the first time on appeal. *People v Ferguson,* 376 Mich 90; 135 NW2d 357 (1965), *People v Pacely,* 51 Mich App 67; 214 NW2d 561 (1974).

Defendant claims that the trial court reversibly erred by referring to the crime as "assault with intent to kill and murder". As appellate defense counsel notes, the statute speaks of "assault with intent to commit the crime of murder". Inclusion of the word "kill" was unnecessary. Such use is archaic and should be discontinued. It does not follow that reversal is required. An examination of the record reveals that the court correctly instructed the jury on the elements of the crime. Logically, the intent to kill is subsumed in the intent to murder. Therefore, the use of the word kill was surplusage.

During the cross-examination of defendant, the prosecutor asked that the witness answer responsively. The trial court thereupon said to defendant: "All right Mr. Breakfield, answer the question as best you can, as truthfully as you can." Defendant argues this constitutes judicial impropriety. It is argued that the court's language conveyed to the jury the court's belief that defendant's testimony up to that point had been untruthful. There was no objection at trial.

We find no manifest injustice has been demonstrated; the absence of an objection at trial renders the issue not properly preserved for review. *People v Tooks,* 55 Mich App 537; 223 NW2d 63 (1974). The test is whether the remarks prevented defendant from having a fair and impartial trial. *People v Watson,* 52 Mich App 211; 217 NW2d 121 (1974).

Defendant also alleges that he was denied effec-

tive assistance of counsel. Since he takes issue with one facet of defense counsel's presentation rather than the totality of his defense, the claim can be more properly characterized as "serious mistake of counsel". *People v Degraffenreid,* 19 Mich App 702, 717; 173 NW2d 317 (1969). Relief may be granted "where the lawyer's mistake is of such serious proportion that it may have been decisive [and] where but for the lawyer's mistake the defendant may not have been convicted". *People v Degraffenreid, supra* at 716. Counsel's behavior which can be fairly ascribed to reasonable trial tactics does not constitute a serious mistake of counsel. *People v Jelks,* 33 Mich App 425; 190 NW2d 291 (1971), *People v Bottany,* 43 Mich App 375; 204 NW2d 230 (1972).

Defendant's claim stems from the following direct examination of defendant:

*"Q. (By defense counsel)* Mr. Breakfield, I asked you concerning your criminal record, and I ask you simply what the offense was and the date, please?

*"A.* I don't know the exact date. It was 1964 and I had another case in 1968, it was murder, September 27th."

On appeal, defendant claims that the 1968 conviction was not for murder, but rather, that he was charged with second-degree murder and convicted of assault with intent to do great bodily harm less than murder. He claims that counsel was obligated to clarify what he knew or should have known was erroneous testimony. It is alleged that defendant was thereby prejudiced before the jury. The rationale is: (1) that defendant was not convicted of murder, (2) that counsel knew or should have known that defendant's statement was inaccurate, (3) that a prior murder conviction

may have been decisive and, (4) that counsel's actions cannot fairly be ascribed to trial tactics. None of these premises is supported.

Defendant has not documented his claim for appeal. Defendant points out now, for the first time, that while he was charged with murder, he was convicted of the lesser offense of assault with intent to do great bodily harm less than murder. Whether or not defense counsel knew this, or should have known this, cannot be determined by the present record. This Court elaborated on the necessity for documentation in *People v Jelks, supra:*

"A convicted person who attacks the adequacy of the representation he received at his trial must prove his claim. To the extent his claim depends on facts not of record, it is incumbent on him to make a testimonial record at the trial court level in connection with a motion for a new trial which evidentially supports his claim and which excludes reasonable hypotheses consistent with the view that his trial lawyer represented him adequately." 33 Mich App at 431.

Also, it cannot be said that the lawyer's "mistake" was decisive. The prosecution had a strong case here. Witness Erby testified that he saw defendant shoot the gun at the complaining witness. Even if defense counsel had corrected the record to reflect that defendant had been convicted of assault with intent to do great bodily harm less than murder, rather than murder, we believe that the evidence presented by the prosecution would still have led the jury to return a verdict of guilty.

Finally, if we assume, *arguendo,* that defense counsel knew that the conviction was not for murder, his subsequent actions could be considered competent trial strategy. If counsel had sought to

clarify defendant's explanation, it would have been necessary to dwell even further on defendant's record, and would be unlikely to erase from the jury's mind the fact that defendant had been charged with second-degree murder, even though he was only convicted of an assault.

Under the circumstances, we cannot say that defense counsel's actions constitute a "serious mistake of counsel" under *Degraffenreid.*

Affirmed.